## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **AVEPOINT, INC.** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **AVEPOINT PUBLIC SECTOR, INC.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:13-cv-00035-GEC** |
| | ) | |
| **POWER TOOLS, INC.** | ) | |
| **d/b/a AXCELER** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MICHAEL X. BURNS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

Plaintiffs, AvePoint, Inc. and AvePoint Public Sector, Inc. (collectively, "AvePoint" or "Plaintiffs"), by their undersigned attorneys, as and for their Complaint against Defendant Power Tools, Inc. d/b/a Axceler ("Axceler") and Defendant Michael X. Burns ("Burns"), (collectively, "Defendants"), allege, based upon personal knowledge as for themselves, and upon information and belief as to others, as follows:

## NATURE OF THE ACTION

1.        This is an action for defamation, breach of contract, trademark infringement under 15 U.S.C. § 1114 and common law, false association/endorsement, false designation of origin, false advertising, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), false advertising under Virginia Code § 18.2-216, 59.1-68.3, and violations of the Virginia Computer Crimes Act, Virginia Code § 18.2-152.1.

## THE PARTIES

2.          AvePoint, Inc. is a corporation duly organized and existing under the laws of Delaware with substantial business operations in Virginia.  AvePoint is a leading provider of infrastructure management solutions for Microsoft® SharePoint® products and technologies. AvePoint produces DocAve, including various versions such as DocAve v5, DocAve 6 and DocAve 6.0 ("DocAve"), its flagship award-winning SharePoint® software platform, and other products including Governance Automation and Compliance Guardian.

3.          AvePoint Public Sector, Inc. is a corporation duly organized and existing under the laws of Virginia, with its principal place of business in Virginia.  AvePoint Public Sector, Inc. is a wholly owned subsidiary of AvePoint, Inc.  AvePoint Public Sector, Inc. works extensively with customers in every branch of the U.S. Armed Forces, Federal Civilian and Intelligence agencies, as well as State and Local Government to provide infrastructure management solutions for Microsoft® SharePoint® products and technologies.

4.          Axceler is a corporation duly organized and existing under the laws of Delaware with headquarters located in Massachusetts.  Axceler is in the business of, among other things, providing competitive software for Microsoft® SharePoint® products and technologies.

5.          Michael X. Burns is Axceler's Regional Vice President of Sales for Western North America.  Burns is a resident of Marina Del Rey, California.

## JURISDICTION AND VENUE

6.          This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §§ 1116 and 1121.  This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

{#1599484-1, 109110-00001-05}

7.         This Court has personal jurisdiction over Defendants because Defendants conduct ongoing and continuous business in Virginia.  Axceler has engaged in business dealings with Virginia residents, including by contracting with Virginia customers, and Axceler has entered a contract with AvePoint subject to exclusive jurisdiction in Virginia.  Defendants have purposefully directed their business activities toward Virginia, including by advertising, promoting, marketing and soliciting Axceler's competitive software for Microsoft® SharePoint® to Virginia residents.  In addition, Defendants have caused harm to AvePoint in Virginia.  Through such conduct, Defendants have purposefully availed themselves of the privileges of conducting business in Virginia, and, when engaging in such conduct, it was reasonably foreseeable that Defendants would be subjected to this Court's jurisdiction.

8.         Venue in this Court is proper under 28 U.S.C. § 1391 (b) and (c) in that Defendants are subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

9.         AvePoint, Inc. is one of the fastest growing U.S. based companies.  From 2007 to 2011, AvePoint, Inc. grew by 1,095 percent.  In 2012, AvePoint, Inc. was named—for a third time—to Deloitte & Touche LLP's Deloitte's 2012 Technology Fast 500™, and was ranked as the 106th fastest growing company among technology, media, telecommunications, life sciences and clean technology companies in North America.

10.        In 2012, AvePoint, Inc. was named to Inc. Magazine's Hire Power Awards honoring America's top job creators, in recognition of the fact that AvePoint, Inc. increased its U.S. based jobs by 113% between 2008 and 2011, and by 47% in 2012.

3

11.      AvePoint develops, licenses and supports infrastructure management and governance software platforms for Microsoft® SharePoint® products and technologies in the public and private sectors.

12.      AvePoint takes pride in the fact that that it is a U.S. based company, and all of its high level software design, detailed software design, assembly and packaging, and product maintenance is done in the United States.   This source and origin of its business, goods and/or services has a significant impact on its customers' willingness and/or ability to buy AvePoint software and/or services.   United States government customers, for example, are required to engage in business with U.S. entities and give preference to domestic end products, including software, for supplies acquired for use in the United States.   *See* 41 U.S.C. 10(a)-(d) ("Buy American Act"); 48 C.F.R. 52.225-1.

13.      In fact, John Santarelli ("Santarelli"), an Axceler Senior Territory Team Lead with responsibility over Axceler's Federal Sector sales has acknowledged that the U.S. source and origin of SharePoint products has a significant impact on government customers' willingness and/or ability to buy SharePoint products.   In his July 31, 2012 Tweet, a copy of which is attached hereto as **Exhibit A**, Santarelli wrote:

> "Is where your #SharePoint products are developed important to you?"
>
> **Government Answer: "Absolutely!"**
>
> @Axceler #ControlPoint #MADEINTHEUSA

(emphasis added).

14.      AvePoint owns U.S. Registration No. 3,388,031 for the "AvePoint" word mark ("Mark") which was issued on the Principal Register by the United States Patent and

Trademark Office on February 26, 2008.  A copy of the registration certificate for the AvePoint

Mark is attached hereto as **Exhibit B** and is incorporated herein by reference.  AvePoint's federal

trademark registration gives AvePoint the exclusive right to use its Mark throughout the United

States.

15.        AvePoint has made a substantial investment in the promotion and protection

of its Mark and considers the AvePoint Mark among its most important and valuable assets.

AvePoint's Mark confers the exclusive right, among other things, to exploit commercially the

AvePoint Mark and to bar use by third parties of any substantially similar marks.

16.        Axceler is a competitor of AvePoint offering competing software for

Microsoft® SharePoint® products and technologies.

17.        Since 2011, Axceler and its agents, including Burns, have engaged in a

campaign of making false, defamatory and deceptive claims and statements regarding AvePoint,

its employees and its products and services in online forums, online marketing channels, and

direct communications with customers, prospective customers and AvePoint employees.

18.        Among other things, Axceler and its agents, including Burns, have made

false or misleading statements of fact attempting to confuse consumers into falsely believing

that: (1) AvePoint is a Chinese (rather than U.S.) company; (2) that AvePoint's software is not

made, developed or supported in the U.S.; (3) that AvePoint's software is maintained in India

(rather than the U.S.); (4) that "Axceler ControlPoint [software] is Microsoft recommended over

AvePoint['s DocAve software]"; (5)  that AvePoint customers are "dumping out of 3 year deals

in year 2 to buy Axceler's Controlpoint"; and (6) that Axceler uses its maintenance revenue to

5

improve its customers' existing product whereas AvePoint used its maintenance revenue to develop new products to which its customers have no access.

19.     These statements and representations are false, defamatory, deceptive and likely to confuse consumers.   Furthermore, these statements have constituted commercial speech, in interstate commerce, designed to influence customers to not do business with Avepoint and to do business with Axceler instead.   And in each case, the statements were disseminated sufficiently to purchasers to constitute commercial advertising and promotion.

20.     Moreover, Defendants have used the AvePoint Mark in commerce to create a LinkedIn account for a fictitious AvePoint representative.  This conduct has caused consumer confusion as to AvePoint's endorsement of, affiliation with, and/or sponsorship of the fictitious account operated by Axceler and confusion as to the goods and/or services offered through that account.

21.     Through this fictitious account, Axceler has passed itself off as AvePoint for the purpose of diverting goods and/or services from AvePoint to Axceler and/or otherwise causing AvePoint competitive harm.  Through this fictitious account, Axceler has offered and/or sold goods and/or services to consumers using the AvePoint Mark in a manner that is likely to cause confusion, and in a manner that has, in fact, caused confusion.

22.     In addition, Axceler has used false pretenses to acquire, download and use for competitive, commercial purposes AvePoint's DocAve 6 for SharePoint 2010 in breach of its contract with AvePoint and in violation of applicable law.

23.     In September 2011, Katie Wong, an Axceler business development representative, emailed an AvePoint customer falsely claiming that "Axceler ControlPoint is Microsoft recommended **over AvePoint**," AvePoint's DocAve is "an incomplete product to manage [the customer's] SharePoint environment's security and governance," "enterprise customers all over the world that have in fact purchased AvePoint for the whole suite **... always end up replacing their administration modules with Axceler ControlPoint**," and "you'll have to purchase ControlPoint . . . when it's time to replace [DocAve]." (emphasis added).  A copy of Katie Wong's email is attached hereto as **Exhibit C** and is incorporated herein by reference.

24.     By letter dated February 17, 2012, AvePoint told Axceler to cease and desist from its unlawful activities.  By letter dated April 30, 2012, AvePoint reiterated its demand that Axceler refrain from further unlawful conduct.   Defendants' unlawful conduct, however, continued.

25.     In or around September 2012, Burns posted false and disparaging Tweets on Twitter.com (a commonly-used means of advertising and promotion in the software industry), referring to AvePoint as "the Evil Avenue" and falsely claiming that AvePoint's "customers are dumping out of 3 year deals in year 2 to buy Axceler's Controlpoint!," and that Axceler is rolling through AvePoint's "customer base like the Germans rolled thru the Maginot Line!"  Copies of these Tweets are attached hereto as **Exhibit D** and are incorporated herein by reference.  These Tweets were published by Burns to customers, potential customers and other members of the SharePoint community (including to Burns' 800 Twitter followers and others members of the SharePoint community and public who view, but do not subscribe to (i.e. "follow") his Axceler Twitter account).

{#1599484-1, 109110-00001-05}

26.     By letter dated October 5, 2012, AvePoint told Axceler that these statements were false and instructed Axceler to retract these Tweets and refrain from further unlawful conduct. By letter dated November 1, 2012, AvePoint gave Axceler a final warning and advised that AvePoint would take action upon learning of additional false and misleading statements or other instances of unfair competition.

27.     Through its continued marketing efforts Axceler representatives, including Burns, have attempted to falsely brand AvePoint as a Chinese company and falsely designate China as the source and origin of AvePoint's products and services. Axceler has then relied on its false designation of origin (China) for AvePoint products and services to market and falsely distinguish its products and services as "Made in the USA" so that it can divert sales from AvePoint to Axceler.

28.     For example, Axceler published numerous false statements that AvePoint is a Chinese rather than U.S. company, and Axceler expressly refers to AvePoint as "MadeinChina," the "Red Dragon," the "#Red #SharePoint Dragon" and the "SinkingREDShip." Axceler's derogatory references to "MadeinChina," "Red Dragon," and "SinkingREDShip" are clear attempts to falsely portray AvePoint as a Chinese company,[1] and falsely portray AvePoint's products and services as not being made, developed or supported in the United States. These statements and factual connotations are provably false because AvePoint is a U.S. company and

---

[1]   "Red Dragon" has long-been a widely-recognized term for the People's Republic of China. *See* Boris Artzybasheff, TIME Magazine, RED CHINA: The Arrogant Outcast Cover (Sep. 13, 1969), *http://www.time.com/time/covers/0,16641,19630913,00.html* (picturing a red dragon ship with the title "RED CHINA"); *http://www.collinsdictionary.com/dictionary/english/red-china* (defining "Red China" as "an unofficial name for (the People's Republic of) China"); *http://www.behance.net/gallery/Red-Dragon-China-Teams-Americas-Cup/5486141* (picturing and discussing the branding for the "China Team 'Red Dragon'" in the 2013 America's cup sailboat racing competition, and noting that the trademark retained the "identity . . . of the original legendary chinese dragon"); Mobasher Zein, CPI Financial, The Red Dragon Rises (Feb. 16, 2013) (discussing the Chinese economy in relation to the U.S.), *http://www.cpifinancial.net/blog/post/18741/the-red-dragon-rises*. Copies of the Time Magazine cover and excerpts from the Behance webpage are attached hereto as **Exhibit E.**

{#1599484-1, 109110-00001-05}

all of its high level software design, detailed software design, assembly and packaging, and product maintenance is done in the United States.

29.     In these Tweets, Axceler representatives refer to AvePoint with comments such as "#SinkingREDShip #MadeinCHINA #LOSING!" and "gongs ringing, competitors losing TKO Red Dragon."   In contrast, the same Axceler representative that posted "#SinkingREDShip #MadeinCHINA #LOSING!," posted "replace the competition with @Axceler and u will say yesssss! . . . @SharePoint #MADEINTHEUSA."

30.     On October 22, 2012, Santarelli and three other individuals republished ("reTweeted") a post that, again, falsely claimed that AvePoint "is MADEINCHINA," and made a false comparison to Axceler on the grounds that Axceler is "MADEINTHEUSA."   This reTweet by Santarelli was directed to Federal Government customers and stated:

> @Axceler #ControlPoint #MADEINTHEUSA, The #SharePoint #Red Dragon is #MADEINCHINA. Long live #ControlPoint !!!!! #ArmyStrong #AUSA2012

The "#AUSA2012" hash tag linked this Tweet to the U.S. Army Twitter community and Federal Government customers of SharePoint products and/or services.

31.     Santarelli's reTweet was directed to Federal Government customers because Santarelli knew and understood that Federal Government customers will buy Axceler products and services instead of AvePoint's if they are led to falsely believe that AvePoint is a Chinese company or led to falsely believe that AvePoint's products and services are not made, developed or supported in the United States.   In fact, Santarelli was the Axceler representative who Tweeted:

9

"Is where your #SharePoint products are developed important to you?"

**Government Answer: "Absolutely!"**

@Axceler #ControlPoint #MADEINTHEUSA. (emphasis added).

32.     Similarly, Axceler representatives Tweeted advertisements such as: "No matter what color you choose... RED + WHITE + BLUE will always dominate. Buy something #MADEINTHEUSA, buy @Axceler #ControlPoint." Choosing "RED," of course, refers to choosing AvePoint, the "#Red #SharePoint Dragon" or "SinkingREDShip," a falsely designated Chinese company, whereas "choos[ing] Red + White + Blue" refers to choosing Axceler, a U.S. company. This Tweet was originally published by Santarelli on November 15, 2012 to customers, potential customers and other members of the SharePoint community (including to Santarelli's 241 Twitter followers and others members of the SharePoint community and public who view, but do not follow his Axceler Twitter account).

33.     Santarelli's Tweet was then then republished to customers, potential customers and other members of the SharePoint community by four other Axceler employees, Ryan Tully ("Tully"), Axceler's Senior Territory Account Manager—Heartland Region, Matthew Isenhart ("Isenhart"), Axceler's Senior Territory Account Manager—New England Region, John DeRosby ("DeRosby"), Axceler's Territory Account Manager for Indiana and Kentucky, and John Smyth ("Smyth"), Axceler's Business Development Representative for the Federal Government | Mid-Atlantic Region (including to Tully's, Isenhart's DeRosby's and Smyth's 301 Twitter followers and others members of the SharePoint community and public who view, but do not follow their Axceler Twitter accounts).

34.     In yet another Tweet, Burns wrote to his 800 Twitter followers that Axceler has "partners in the office who luv America and Hate the Eval Avenue . . . ."

10

35.     Moreover, Axceler representatives have made statements which clearly demonstrate that Axceler has successfully diverted government sales from AvePoint to Axceler by falsely representing to prospective government customers that AvePoint products and services are not made, developed or supported in the United States.   For example, on January 24, 2013, Santarelli Tweeted to customers, potential customers and other members of the SharePoint community:

> **Ouch...Another #Federal Deployment** *Finds Out Where the Competition is Developed*.   #SharePoint **#RedDragon** # Governance #FDCCI @Axceler. (emphasis added).

This Tweet was republished by David Wendell ("Wendell"), Axceler's Senior Team Leader in the Dallas/Fort Worth Area, and David Amabile ("Amabile"), Axceler's Territory Account Manager in the Miami/Fort Lauderdale Area, to customers, potential customers and other members of the SharePoint community (including to Wendell's and Amabile's 276 Twitter followers and others members of the SharePoint community and public who view, but do not follow their Axceler Twitter accounts).

36.     Along similar lines, Santarelli Tweeted to customers, potential customers and other members of the SharePoint community (including to his 241 Twitter followers):

(a)   **Most Chinese Companies reporting Losses" Buy #American** | Buy #ControlPoint . . .  (emphasis added).

(b)   The **#Red #SharePoint Dragon loses another limb**...... **Another #Federal Deployment makes the paradigm shift to @Axceler.** (emphasis added).

(c)   Continuing to Slay the Big #Red #SharePoint Dragon.

(d)   #SharePoint #Red Dragon, this one is going to hurt....

(e)   #Competitors in #SharePoint are getting #Lazy . . . **nevermind outsourced bs**.

11

    (f)    . . . Any Mission Critical #Federal #SharePoint Enviornment **should only be using products made in the USA. #national security**. (emphasis added).

    (g)    Great to see **another Marine Corps Group replacing the competition with #ControlPoint which *is developed and supported* in the #USA**. @Axceler.  (emphasis added).

This post was reTweeted by Jamie Aliperti ("Aliperti"), Axceler's Senior Partner Solutions Specialist in the Greater Los Angeles Area, and Isenhart to customers, potential customers and other members of the SharePoint community (including their 458 followers).

    (h)    @Axceler **#ControlPoint is #MadeInTheUSA *that's why it's being used*** in Mission Critical installs across the #Navy and the #Marines @MSinDOD. (emphasis added).

This post was reTweeted by Aliperti and Christian Buckley ("Buckley"), Axceler's Director of Product Evangelism, to customers, potential customers and other members of the SharePoint community (including to their 6,827 followers). This post was also linked to by the hash tags #Navy and #Marines to the Navy and Marine Twitter communities and to Microsoft and the US Department of Defense Twitter community through @ MSinDOD which has 1,428 followers.

    (i)    #Federal Agencies reduce the cost of their #SharePoint 2010 deployments w/ @Axceler #ControlPoint | **Did I mention it's #MadeInTheUSA** #FDCCI." (emphasis added).

This post was reTweeted by Buckley and Mack Sigman ("Sigman"), President of the Federal SharePoint User Group ("FEDSPUG"), to customers, potential customers and other members of the SharePoint community (including to Buckley's 6,510 followers, FEDSPUG's 614 followers, and Sigman's 743 followers).  This post was also linked to by the hash tag #FDCCI to the Federal Data Center Consolidation Initiative ("FDCCI") Twitter community.

    (j)    Another #Federal Agency buys @Axceler over the Competition. #MadeInTheUSA.

12

This post was reTweeted Nick Harvey ("Harvey"), Axceler's Northeast Business Development Representative, Carrie Page ("Page"), Axceler's Marketing Events Manager in the Greater Boston Area, and Derek Lessard ("Lessard"), Axceler's Director of Federal | Mid-Atlantic Sales to customers, potential customers and other members of the SharePoint community (including to Harvey's, Page's and Lessard's 440 followers).

37.     Copies of the aforementioned Tweets are attached hereto as **Exhibit F.** Additional Tweets reflecting similar false and defamatory statements are attached hereto as **Exhibit G** and are incorporated herein by reference.

38.     Axceler's false statements in direct communications with AvePoint customers and potential customers mirror its online campaign to blackball AvePoint from government sector work through its false designations of origin, and false advertising campaign. For example, on October 23, 2012, Axceler called AvePoint customer U.S. Department of Defense Joint Improvised Explosive Device Defeat Organization ("JIEDDO") claiming that AvePoint is "developed in China and maintained in India."  Being a governmental entity required to engage in business with U.S. entities, JIEDDO was concerned about these accusations and delayed its purchase "to get answers to these questions."

39.     On October 24, 2012, Michael McLean, Deputy CIO, Knowledge Management, JIEDDO, sent an internal e-mail—"Subject: AvePoint v. Axceler"— memorializing his conversation with the Axceler representative and expressing his concerns about the (falsely stated) source and origin of AvePoint's products and services.  Specifically, Mr. McLean wrote:

{#1599484-1, 109110-00001-05}

> **I had made my decision to purchase AvePoint but the Axceler sales guy (a persistent fellow) called again yesterday.** Normally, I would have ignored him but he <u>continues</u> to point out <u>the fact about AvePoint being developed in China and maintained in India</u>. I don't know if either are true but I need to understand so I can assess the impact. Can you research? Are other DOD orgs using AvePoint? If so, who? Does it have a CON? **Before we make a purchase I'd like to get answers to these questions.** (emphasis added).

A copy of this e-mail is attached hereto as **Exhibit H** and is incorporated herein by reference.

40.     This e-mail, along with the Axceler's Tweets and other communications, shows that Axceler has a well-established pattern and practice to blackball AvePoint from government sector work and that Axceler is engaged in an organized campaign to convince SharePoint consumers that AvePoint is a Chinese company and its products and services are not made, developed or supported in the United States.

41.     The wide and recurring distribution of Axceler's false and defamatory communications within the SharePoint community—including to customers and potential customers of AvePoint and/or Axceler—demonstrates that it is engaged in a full-fledged campaign to falsely portray AvePoint as a Chinese company and its products and services as not being made, developed or supported in the United States. Axceler's statements, false factual connotations and the inferences fairly attributable to them are provably false because AvePoint is a U.S. company, and all of its high level software design, detailed software design, assembly and packaging, and product maintenance is done in the United States.

42.     Despite Axceler's attempts to disguise certain of its false and defamatory statements by referring to AvePoint through thinly veiled inferences, implication or insinuation using "MadeinChina," the "Red Dragon," the "Red SharePoint Dragon" the "SinkingREDShip," or the "Competition," the meaning of these statements and all inferences fairly attributable to

them is clear to those in the relevant community and understood to refer to AvePoint and its products and/or services.

43.        As previously noted by Santarelli, Axceler's false advertising campaign has successfully diverted numerous government customers from AvePoint to Axceler.   On information and belief, Axceler's false and deceptive statements about AvePoint and its products and services have caused AvePoint to lose numerous customers.

44.        As another example, in August 2012, Axceler told AvePoint customer Fairpoint Communications that Axceler used its maintenance revenue to improve its customers' existing product whereas AvePoint used its maintenance revenue to develop new products to which its customers have no access.   In reliance on these false and deceptive statements, Fairpoint Communications decided to purchase products and services from Axceler instead of AvePoint.

45.        To perpetuate its false marketing campaign against AvePoint and create consumer confusion, in or around October 2012, Axceler created a fake account on "China | LinkedIn" for a fictitious AvePoint employee named Jim Chung, using AvePoint's registered Mark.   Mr. Chung is identified as a "Software Engineer at AvePoint" located in "Xinjiang, China" who graduated from China's "Tsinghua University" and has worked for AvePoint from "December 2011 – Present."   A copy of this fictitious account and connections associated with this account are attached hereto as **Exhibit I** and are incorporated herein by reference.

46.        LinkedIn holds itself out as the "world's largest professional network" and its stated mission is "to connect the world's professionals to make them more productive and successful."   Unlike social media sites, LinkedIn is designed primarily (if not solely) for the

purpose of locating, establishing, and maintaining business and customer relationships. Through Axceler's fictitious AvePoint account, the business community and the public at large are encouraged to "send a message" to Jim Chung at AvePoint and to "contact Jim for: career opportunities, new ventures, expertise requests, reference requests, consulting offers, job inquiries, business deals and getting back in touch." LinkedIn is another commonly-used means of advertising and promotion in the software industry.

47.     Because Jim Chung is falsely identified as an AvePoint representative using AvePoint's Mark, consumers and others in the business community who view his profile are likely to be and have been confused and misled into thinking that "Jim Chung" can be contacted regarding:  AvePoint career opportunities, new ventures with AvePoint, business deals with AvePoint, and/or expertise, references and consulting related to AvePoint products and services. Contrary to consumer's expectations, when people contact AvePoint through Jim Chung, they are not directed to AvePoint, as the registered mark would indicate; rather, they are unwittingly directed to Axceler's, AvePoint's competitor.  Axceler, therefore, is and has been able to profit from AvePoint's goodwill by fielding customer inquiries through Axceler's impostor AvePoint account.

48.     In fact, evidence of actual confusion is reflected in Jim Chung's connection list which shows actual AvePoint employees and current and potential AvePoint customers who have been confused about AvePoint's affiliation with Axceler's impostor account.  Because Axceler used AvePoint's Mark in its profile, AvePoint's current customers, including Nintex and Aetna have been misled and deceived into believing that this is a legitimate AvePoint account. Moreover, numerous AvePoint employees have been misled and deceived into believing that Jim Chung was an AvePoint colleague, and have connected to this account.  This confusion as to

16

source or sponsorship by current AvePoint employees is equally insidious because those employees unwittingly enabled Axceler to access other AvePoint customer and employee contacts—including those customer contacts associated with legitimate AvePoint employees' profiles—and other competitive business information.

49.     Moreover, Axceler associated this fictitious AvePoint profile and the AvePoint Mark with various commercial groups and associations on LinkedIn, including: ASP.NET MVC Developers; C#.NET- Advanced Programmers & Software Engineers; Microsoft Business Intelligence; Microsoft Technologies; Mobile Development and Statups; Silverlight Experts; Silverlight Professionals; and Tsinghua University.  These links connect to various products and services.  Silverlight Experts, for example, links to various Silverlight software products and services, and to the Silverlight website, http://silverlight.net.  Moreover, ASP.NET MVC Developers, C#.NET- Advanced Programmers & Software Engineers, Mobile Development and Statups, Silverlight Experts and Silverlight Professional all have "Promotion" tabs that include product and services promotions by members such as "Silverlight UI Toolkit with 'Special Double Promo' for this month"[2] and "We provide Expert Developers @ USD $5/Hr.   High    Quality    Work.    Free    Quote!!!    SKYPE    ID:    doi.livehelp http://www.ExpertFromIndia.com."[3]

50.     By falsely associating this profile with commercial groups and associations, some of which are involved in the SharePoint community, Axceler has increased the visibility of this profile in SharePoint community and increased the distribution of its false statements and

---

[2] *See, e.g.,* http://www.linkedin.com/groups?promosList=&gid=124074&trk=anet_ug_promos (a hyperlinked promotion on the Silverlight Experts group "Promotion" tab).
[3] *See, e.g.,* http://www.linkedin.com/groups?promosList=&gid=1881585&trk=anet_ug_promos (a hyperlinked promotion on the Mobile Development and Statups group "Promotion" tab).

{#1599484-1, 109110-00001-05}

associations. For example: the ASP.NET MVC Developers professional group has 13,827 members; the C#.NET- Advanced Programmers & Software Engineers professional group has 2,346 members; the Microsoft Business Intelligence professional group has 63,279 members; the Mobile Development and Statups professional group has 2,996 members; the Silverlight Experts professional group has 8,170 members; and the Silverlight Professionals group has 4,904 members.

51.     On information and belief, Burns was directly involved in Axceler's efforts to create the fictitious AvePoint profile, and Burns has been involved in publicizing this profile. On November 9, 2012, Burns Tweeted: "**#Axceler and Jim Chung are gonna rock Vegas!**" On November 14, 2012, during the SharePoint Conference in Las Vegas, Burns posted another Tweet: "**Just ran into jim chung from avePoint Good guy.**" Similarly, on November 9, 2012, Axceler's Director of Product Evangelism Christian Buckley, who has 6,510 Twitter followers, responded: "**@MICHAELXBURNS Free Jimmy! #Axceler.**" Copies of these Tweets are attached hereto as **Exhibit J** and are incorporated herein by reference.

52.     Axceler's use of AvePoint's Mark in operating this LinkedIn account has caused consumer confusion as to the affiliation, connection, or association of AvePoint with this fictitious account, and as to the origin, sponsorship, or approval of the goods, services, or commercial activities offered by Axceler through this account. Moreover, Axceler's use of AvePoint's Mark in operating this LinkedIn account is likely to cause and/or has caused consumer confusion as to the nature, characteristics, qualities, or geographic origin of AvePoint's goods and/or services.

53.     Axceler has continued its pattern and practice of vilifying AvePoint online and through social media.   For example, since December 2012, Axceler representatives have Tweeted:

(a)     #Axceler Rain or Shine the Red Dragon is going down!

This Tweet was sent by Nate Hammond ("Hammond"), Axceler's Sales Manager for the Southwest Region, to customers, potential customers and other members of the SharePoint community (including his 164 followers) and was reTweeted by Smyth, Matthew New ("New"), Axceler's Territory Account Manager in the Greater London, United Kingdom Region, Jeff Emmons ("Emmons"), Axceler's Business Development Representative for the Tri-State Region, and Vogle Axton ("Axton") to customers, potential customers and other members of the SharePoint community (including their 179 followers).

(b)     Another Fortune FIVE company added to the Axceler customer list … crushing the Red Dragon yet again!

This Tweet was sent by Wendell to customers, potential customers and other members of the SharePoint community (including his 212 followers) and was reTweeted by Daylan Swedlow ("Swedlow"), Axceler's Senior Territory Account Manager for Missouri, Kansas and Iowa, to customers, potential customers and other members of the SharePoint community (including his 109 followers)

(c)     . . . Another enterprise customer for #Axceler! Full Red Dragon Replacement . . . .

This Tweet was sent by Carnelian Gill ("Gill"), Axceler's Senior Development Representative for Southern California/Nebraska, to customers, potential customers and other members of the SharePoint community (including her 161 followers) and was reTweeted by Ben Crosswell

{#1599484-1, 109110-00001-05}

("Crosswell"), Axceler's Sales Manager in the Greater Los Angeles Area, to customers, potential customers and other members of the SharePoint community (including his 118 followers).

(d)     The red dragon loses again in Texas! New year same story. @Axceler Southwest MIR!

This Tweet was sent by Hammond to customers, potential customers and other members of the SharePoint community (including his 164 followers).

(e)     @Axceler Southwest locked and loaded for the year! Looks like its going to be another rough year for the red dragon.

This Tweet was sent by Hammond to customers, potential customers and other members of the SharePoint community (including his 164 followers), and reTweeted by Gill to customers, potential customers and other members of the SharePoint community (including her 161 followers).

(f)     . . . Dominating the Red Devil in week one! 2013 is going to be so much fun @Axceler

This Tweet was sent by Hammond to customers, potential customers and other members of the SharePoint community (including his 164 followers), and reTweeted by Gill to customers, potential customers and other members of the SharePoint community (including her 161 followers).

Copies of these Tweets are included within **Exhibit G**.

54.     On December 18, 2012, Axceler's deceptive and unlawful practices reached new heights (or lows) when Axceler created a fictitious e-mail account and profile to obtain a trial copy of AvePoint's most recent version of DocAve, DocAve 6.  At 16:10:44 on Tuesday,

{#1599484-1, 109110-00001-05}

December 18, 2012, AvePoint received the following request for a trial download of DocAve 6 from IP address 64.17.251.102:

| | |
|---|---|
| Products | 1. DocAve v6 for SharePoint 2010 |
| Your Name: | **Jill Wagner** |
| Company: | **Kohl\'s Food Stores** |
| Email: | **JillRWagner@dayrep.com** |
| Country: | **United States** |
| Phone: | **435-[***-****]** |
| Environment: | **2010** |
| Personalized Demo: | **No, I dont!** |
| SEND MARKETING MATERIALS: | **DO NOT SEND** |

55.     IP address 64.17.251.102, however, is not registered to "Jill Wagner, Kohl\'s Food Stores." The address is registered to Defendant "POWER-TOOLS-INC-DBA-AXCELER." A copy of the WHOIS Result for this IP address is attached hereto as **Exhibit K** and is incorporated herein by reference. Moreover, the e-mail extension "@dayrep.com" is not a real e-mail address; rather, it is an e-mail address created by Axceler through "Fake Mail Generator™." A copy of the website www.fakemailgenerator.com/?e=kmiller@dayrep.com with a representative "@dayrep.com" address is attached hereto as **Exhibit L** and is incorporated herein by reference.

56.     Axceler acquired AvePoint's trial copy of DocAve 6 under false pretenses so that it could examine AvePoint's software for competitive, commercial purposes. Axceler's copying and use of this trial version of DocAve 6, however, violates AvePoint's Website Terms

and Conditions, a copy of which is attached hereto as **Exhibit M** and is incorporated herein by reference. Among other things, the Terms and Conditions provide:

> . . .

> By accessing, viewing, or using this Site, you, the User, indicate that you understand and intend these Terms and Conditions and Privacy Policy to be the legal equivalent of a signed, written contract and equally binding, and that you agree to such Terms and Conditions and Privacy Policy.

> . . .

> 1. Grant of License. This Agreement provides you, the User, **with a personal**, revocable, nonexclusive, nontransferable license to use this Site conditioned on your continued compliance with the Terms and Conditions of this Agreement. Users may access, print and **download materials and information on this Site solely for personal and noncommercial use**, provided that all hard copies contain all copyright and other applicable notices contained in such materials and information. Under no circumstances shall any or substantially all content of the Site be copied or downloaded in any medium. Unless and except as otherwise expressly permitted herein or with special approval directly from AvePoint, a User may not modify, create derivatives of, copy, distribute, broadcast, transmit, reproduce, publish, license, transfer, sell, mirror, frame, "deep link," "scrape," data mine, or otherwise use any information or material obtained from or through this Site. As a further condition of use of this Site, all Users warrant to AvePoint that they will not use this Site for any purpose that is unlawful or otherwise prohibited by these Terms and Conditions, including, but not limited to, attempting or actually (a) disrupting, impairing or interfering with this Site; (b) collecting any information about other users of this Site; or (c) systematically extracting data contained in this Site to populate databases for internal or external use. To seek permission to use materials and information (including screenshots of this Site or posting any content from this Site) beyond the scope of the foregoing license, please contact AvePoint via postal mail, e-mail or telephone as indicated below. Any rights not expressly granted herein are reserved.

> . . .

> 11. Governing Law. This Agreement will be governed by the laws of the Commonwealth of Virginia, without regard to conflicts of law rules, and the exclusive jurisdiction and venue for any dispute shall be the Commonwealth of Virginia.

{#1599484-1, 109110-00001-05}

57.      On information and belief, Axceler had actual knowledge of AvePoint's Website Terms and Conditions before it accessed and downloaded AvePoint's trial copy of DocAve 6 using false pretenses.  Axceler saw the Website terms and Conditions and Axceler accepted those terms through the contractually defined method for expressing assent.

58.      The deceptive and unlawful manner and method in which Axceler accessed the software (creating a fictitious user name and e-mail account to pose as a fictitious customer), itself, further demonstrates Axceler's actual knowledge of AvePoint's Website Terms and Conditions.

59.      At a minimum, Axceler had constructive knowledge of AvePoint's Website Terms and Conditions before it accessed and downloaded AvePoint's trial copy of DocAve 6 using false pretenses.  Axceler is in constant, direct competition with AvePoint.  Axceler is not an end user of AvePoint's products and it is by no means an unsophisticated consumer.  Like AvePoint, Axceler offers free downloads of its competing products via its own website. *http://www.axceler.com/downloads/index.*  Like AvePoint, Axceler has its own browsewrap Terms of Use.  *http://www.axceler.com/terms-of-use.*  Like AvePoint, Axceler's Terms of Use are provided via a link at the bottom of its website next its copyright notice, its "Privacy Policy" and its "Site Map."  *Compare http://www.avepoint.com/website-terms-conditions/* (AvePoint's Terms and Conditions link above the copyright notice appearing with the "PRIVACY POLICY | ACCESSIBILITY STATEMENT | SITEMAP | WEBSITE TERMS & CONDITIONS" links); *with http://www.axceler.com/terms-of-use* (Axceler's Terms of Use link beside its copyright notice appearing as "Terms of Use | Privacy Policy | Site Map").  Like AvePoint, Axceler's Terms of Use govern the use of its website and address restrictions on the use of downloaded software.  Like AvePoint, Axceler's Terms of Use contain a choice of law provision and an

23

integration clause.  Axceler, therefore, had actual (and at a minimum constructive) notice of AvePoint's Website Terms and Conditions and Axceler agreed to the same.

60.	Knowing that it was not authorized to download AvePoint's software, Axceler created a fictitious user name and e-mail account to pose as a fictitious customer during downloading.

61.	As a result of the aforementioned conduct by Defendants, AvePoint suffered and seeks damages and equitable relief against Axceler and/or Burns for:  defamation (Count I), breach of contract (Count II), trademark infringement (Count III), false association and false endorsement (Count IV), false designation of source and origin (Count V), false advertising (Counts VI and VII), unfair competition (Count VIII), and violations of the Virginia Computer Crimes Act (Count IX).

## CAUSES OF ACTION

### COUNT I
### DEFAMATION
(Against Defendants)

62.	AvePoint repeats and specifically incorporates the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

63.	Defendants have intentionally published to third parties untrue and defamatory statements concerning AvePoint, its employees and its products and services in online forums, online marketing channels and in direct communications with customers, prospective customers and AvePoint employees.

64.	Defendants' untrue and defamatory statements are set forth in detail above, but include Defendants' statements that:  (1) AvePoint is a Chinese company; (2) AvePoint's software is not developed, supported or maintained in the U.S.; (3) AvePoint's software is

24

maintained in India; (4) "Axceler ControlPoint [software] is Microsoft recommended over AvePoint['s Doc Ave software]"; (5)  AvePoint customers are "dumping out of 3 year deals in year 2 to buy Axceler's Controlpoint"; and (6) Axceler uses its maintenance revenue to improve its customers' existing product whereas AvePoint used its maintenance revenue to develop new products to which its customers have no access.

65.        These untrue and defamatory statements have disparaged AvePoint professionally in its trade and profession and constitute defamation *per se*.

66.        The respective publishers in each instance knew that the unprivileged statements that they published were materially false and/or acted in reckless disregard of said statements' falsity.

67.        As a direct and proximate result of Defendants' wrongful conduct, AvePoint has and/or will suffer damages to its trade, business and reputation, and is entitled to recover the same in an amount to be proven at trial.  AvePoint is entitled to recover presumed damages because Defendants' statements constitute defamation *per se*.  AvePoint is entitled to recover punitive damages because Defendants' made the untrue and defamatory statements with knowledge of their falsity and/or reckless disregard of whether the statements were false.

## COUNT II
## BREACH OF THE CONTRACT
(Against Axceler)

68.        AvePoint repeats and specifically incorporates the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

69.        Axceler had actual and/or constructive knowledge of AvePoint's Website Terms and Conditions before it accessed and downloaded AvePoint's trial copy of DocAve 6 using false pretenses.  Axceler saw the Website terms and Conditions and Axceler accepted

{#1599484-1, 109110-00001-05}

those terms through the contractually defined method for expressing assent (by accessing, viewing, and using AvePoint's website).

70.     The deceptive and unlawful manner and method in which Axceler accessed the software (creating a fictitious user name and e-mail account to pose as a fictitious customer), itself, further demonstrates Axceler's actual knowledge of AvePoint's Website Terms and Conditions.

71.     AvePoint's Website Terms and Conditions are valid and binding on Axceler.

72.     Pursuant to the License Grant in the Terms and Conditions, Axceler understood and agreed, among other things, that it was not authorized to access, print or download materials and information for business or commercial use, and that it could not, "[u]nless and except as otherwise expressly permitted herein or with special approval directly from AvePoint . . . modify, create derivatives of, copy, distribute, broadcast, transmit, reproduce, publish, license, transfer, sell, mirror . . . or otherwise use any information or material obtained from or through this Site."

73.     By downloading the trial version of DocAve 6 for SharePoint 2010 for competitive, commercial purposes, Axceler violated the terms of AvePoint's Website Terms and Conditions.

74.     Because Axceler used false pretenses to acquire a copy of DocAve 6 for SharePoint 2010, Axceler "modif[ied], create[d] derivatives of, cop[ied], distribut[ed], broadcast[ed], transmit[ted], reproduce[d], publish[ed], license[d], transfer[ed], s[old], mirror[ed] . . . or otherwise use[d] . . . information or material obtained from or through this Site,"

{#1599484-1, 109110-00001-05}

including, without expressed permission or approval directly from AvePoint, in violation of the terms of AvePoint's Website Terms and Conditions.

75.      As a direct and proximate result of Axceler's breach of contract, AvePoint has and/or will suffer direct and consequential damages in an amount to be proven at trial.

**COUNT III**
**TRADEMARK INFRINGEMENT**
(Against Defendants)
(15 U.S.C. § 1114)

76.      AvePoint repeats and specifically incorporates the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

77.      AvePoint owns U.S. Registration No. 3,388,031 for the AvePoint Mark which was issued on the Principal Register by the United States Patent and Trademark Office on February 26, 2008, and AvePoint has used and continues to use this Mark in connection with its specified goods and services in interstate commerce.

78.      The AvePoint Mark is inherently distinctive and/or has acquired secondary meaning, and the AvePoint Mark has been and will continue to be known throughout the United States as identifying and distinguishing AvePoint's goods and services.

79.      Without authorization or the consent of AvePoint, Defendants created a fictitious AvePoint LinkedIn account using AvePoint's registered Mark to falsely identify the source and origin of the goods and services offered through that account. Defendants' use of AvePoint's registered mark was in commerce and in connection with the sale, offering for sale, distribution, or advertising of goods or services, and in a manner that is likely to cause confusion, or to cause mistake, or to deceive.

{#1599484-1, 109110-00001-05}

80.        Defendants are using an exact copy of AvePoint's registered mark, and consumers and others in the business community are, have been and will continue to be confused and misled into thinking that Jim Chung is an AvePoint representative that can be contacted regarding AvePoint career opportunities, new ventures with AvePoint, business deals with AvePoint, and/or expertise, references and consulting related to AvePoint products and services. Contrary to consumers' expectations, when they and others in the business community contact AvePoint through Jim Chung, they are unwittingly directed, not to an AvePoint representative, as the Mark would indicate, but to its competitor, Axceler.

81.        Defendants are and/or have been able to use AvePoint's Mark to divert sales from AvePoint to Axceler and/or to pass off Axceler's goods and/or services as AvePoint's. Defendants are and/or have been able to profit from AvePoint's goodwill by soliciting and/or responding to requests from existing and/or prospective AvePoint customer and otherwise diverting business or causing competitive harm to AvePoint through Defendants' impostor AvePoint account.

82.        Through Axceler's fictitious AvePoint LinkedIn account, Axceler has offered and/or sold goods and/or services to consumers using the AvePoint Mark in a manner that is likely to cause confusion, and in a manner that has, in fact, caused confusion.  For one thing, Axceler has used the AvePoint mark to attract customers to communicate with Axceler when those customers would reasonable believe they were dealing with AvePoint.  For another, Avepoint has used the AvePoint Mark to falsely promote goods, services and promotional statements under the AvePoint brand when those goods, services and statement were not authentic to or authorized by AvePoint.

83.     Evidence of actual confusion is reflected in Jim Chung's connection list showing other AvePoint employees and current or potential customers who have been confused into thinking that Jim Chung is a bona fide representative of AvePoint and that he can be contacted regarding AvePoint's goods and/or services.

84.     By using AvePoint's Mark for profit without AvePoint's authorization or consent, Defendants are depriving AvePoint of its exclusive right to control, and benefit from, the AvePoint Mark.  If permitted to continue, Defendants' actions will nullify AvePoint's right to the exclusive use of its Mark, free from infringement.

85.     Defendants' use of the AvePoint Mark constitutes trademark infringement in violation of § 32 of the Lanham Act, 15 U.S.C. §§ 1114.

86.     By reason of and as a direct and proximate result of Defendants' trademark infringement, Defendants have caused damage to AvePoint's business, reputation and goodwill and/or have diverted business and sales from AvePoint to Axceler.   AvePoint is entitled to recover Defendants' profits, damages suffered by AvePoint and the costs of the action, and/or statutory damages for use of the counterfeit mark in lieu of damages and profits.

87.     Defendants' acts of trademark infringement have been committed knowingly, willfully, deliberately and maliciously with the intent to cause confusion and mistake and to deceive.  Accordingly, AvePoint is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

{#1599484-1, 109110-00001-05}

88.     AvePoint has been, and continues to be, damaged by Defendants' activities and conduct, and unless Defendants' conduct is enjoined, AvePoint's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.  Accordingly, AvePoint is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

### COUNT IV
### FALSE ASSOCIATION/FALSE ENDORSEMENT
(Against Defendants)
(15 U.S.C. § 1125(a))

89.     AvePoint repeats and specifically incorporates the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

90.     Defendants' use of the AvePoint Mark on the fictitious LinkedIn account, as set forth above, constitutes false association and/or false endorsement in violation of § 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a).

91.     Defendants' use of the Mark to identify its goods or services offered through the LinkedIn account are likely to create consumer confusion concerning AvePoint's endorsement of, sponsorship of,  approval of, and/or affiliation with the fictitious account, the goods and services offered via the account and/or certain of the "groups and associations" with whom the account is affiliated.

92.     By reason of and as a direct and proximate result of Defendants' false association and false endorsement, Defendants have caused damage to AvePoint's business, reputation and goodwill and/or have diverted business and sales from AvePoint to Axceler. AvePoint is entitled to recover Defendants' profits, damages suffered by AvePoint and the costs of the action.

{#1599484-1, 109110-00001-05}

93.       Defendants' acts of false association and false endorsement have been committed knowingly, willfully, deliberately and maliciously with the intent to cause confusion and mistake and to deceive.  Accordingly, AvePoint is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

94.       By reason of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to AvePoint, for which there is no adequate remedy at law, and for which AvePoint is entitled to injunctive relief.

## COUNT V
## FALSE DESIGNATION OF SOURCE AND/OR ORIGIN
(Against Defendants)
(15 U.S.C. § 1125(a))

95.       AvePoint repeats and specifically incorporates the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

96.       Defendants' conduct, as set forth above, constitutes false designation of source and/or origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a).

97.       Through the aforementioned marketing efforts, Twitter posts, direct communications with customers and other representations and statements in interstate commerce, including the fictitious LinkedIn profile, Defendants have attempted to confuse consumers into falsely believing that: (1) AvePoint is a Chinese company; (2) that AvePoint's software is not made, developed or supported in the United States; (3) that AvePoint's software

{#1599484-1, 109110-00001-05}

is maintained in India (rather than the U.S.); and (4) AvePoint's goods and services (rather than Axceler's) are offered via the impostor AvePoint LinkedIn profile operated by Defendants.

98.     Defendants' conduct is likely to cause confusion, or to cause mistake, or to deceive consumers as to the geographic origin of AvePoint's goods and services and as to the source and origin of any and all goods and/or services offered via the fictitious LinkedIn account—which Defendants are passing off as AvePoint's goods and/or services.

99.     By reason of and as a direct and proximate result of Defendants' false designations of source and origin, Defendants have caused damage to AvePoint's business, reputation and goodwill and/or have diverted business and sales from AvePoint to Axceler. AvePoint is entitled to recover Defendants' profits, damages suffered by AvePoint and the costs of the action.

100.    Defendants' acts of false designation of source and origin have been committed knowingly, willfully, deliberately and maliciously with the intent to cause confusion and mistake and to deceive.  Accordingly, AvePoint is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

101.    By reason of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to AvePoint, for which there is no adequate remedy at law, and for which AvePoint is entitled to injunctive relief.

## COUNT VI
## FALSE ADVERTISING
(Against Defendants)
(15 U.S.C. § 1125(a))

102.      AvePoint repeats and specifically incorporates the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

103.      As set forth above, Defendants have violated and continue to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

104.      The conduct of Defendants as described above constitutes false advertising. The statements and representations made by Defendants are likely to mislead, or have misled, consumers about the nature, characteristics, and quality of AvePoint's products and services, and are likely to cause, or have caused, consumers to falsely believe, among other things, that Axceler's products and services are superior, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

105.    Axceler engaged in an organized false advertising campaign through Twitter, LinkedIn and in direct communications with consumers designed to penetrate the relevant market.  Axceler's LinkedIn account (in which it falsely advertised itself as a duly authorized representative of AvePoint and offered goods or services purportedly on behalf of AvePoint), are advertisements by Axceler seeking business and customer contacts by falsely stating that Axceler is a duly authorized representative of AvePoint.  Moreover, Axceler engaged in an organized false advertising campaign on Twitter and sent direct communications to customers falsely stating that (1) AvePoint is a Chinese (rather than U.S.) company; (2) that AvePoint's software is not made, developed or supported in the United States; (3) that AvePoint's software is

33

maintained in India (rather than the U.S.), and (4) AvePoint and its products are inferior and/or unreliable.

106.     By reason of and as a direct and proximate result of Defendants' false advertising, Defendants have caused damage to AvePoint's business, reputation and goodwill and/or have diverted business and sales from AvePoint to Axceler.   AvePoint is entitled to recover Defendants' profits, damages suffered by AvePoint and the costs of the action.

107.     Defendants' acts of false advertising have been committed knowingly, willfully, deliberately and maliciously with the intent to cause confusion and mistake and to deceive.   Accordingly, AvePoint is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

108.     By reason of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to AvePoint, for which there is no adequate remedy at law, and for which AvePoint is entitled to injunctive relief.

## COUNT VII
## FALSE ADVERTISING
(Against Defendants)
(Va. Code §§ 18.2-216 and 59.1-68.3)

109.     AvePoint repeats and specifically incorporates the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

{#1599484-1, 109110-00001-05}

110.     The actions of Defendants described herein including but not limited to the use of false and deceptive and misleading claims about AvePoint or its products or services to solicit customers through online marketing materials, Twitter posts, LinkedIn connections, direct customer communications, and other means constitutes false and misleading advertising in violation of Virginia Code §§ 18.2-216 and 59.1-68.3, and AvePoint has suffered and is continuing to suffer a loss to its business reputation and goodwill as a result thereof.

111.     Defendants' actions, as alleged herein, were intended to wrongfully divert sales and business from AvePoint to Axceler.

112.     Defendants' advertisements, as alleged herein, contained false assertions, representations, and statements of fact which are untrue, deceptive or misleading.

113.     Defendants have made and distributed these customer solicitations through website and social media in Virginia.

114.     AvePoint has no adequate remedy at law and is suffering irreparable harm which will continue unless enjoined.

115.     Defendants' conduct has caused damage to AvePoint's business, reputation and goodwill, and AvePoint seeks recovery of the same in an amount to be determined at trial. AvePoint is entitled to recover attorneys' fees under Virginia Code § 59.1-68.3.

**COUNT VIII**
**UNFAIR COMPETITION**
(Against Defendants)
(Common Law)

116.     AvePoint repeats and specifically incorporates the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

117.     Defendants' actions, as alleged herein, constitute common law trademark infringement and unfair competition.

35

118.     AvePoint has no adequate remedy at law and is suffering irreparable harm.

119.    Defendants' conduct has caused damage to AvePoint's business, reputation and goodwill in an amount to be determined at trial.

## COUNT IX
## VIOLATION OF THE VIRGINIA COMPUTER CRIMES ACT
(Against Axceler)
(Virginia Code § 18.2-152.1)

120.     AvePoint repeats and specifically incorporates the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

121.     On December 18, 2012, Axceler, under false pretenses and without authority, used AvePoint's servers, computers and/or computer network to obtain a trial copy of AvePoint's DocAve 6 for SharePoint 2010 computer software for competitive purposes.

122.     Axceler    created    a    fake    e-mail    account    using http://www.fakemailgenerator.com/ and a fake username to that it used to wrongfully obtain a trial copy of AvePoint's software for competitive purposes.

123.     AvePoint did not offer to make its software available for free to competitors such as Axceler, and this software has value, particularly to competitors looking to gain a competitive edge over AvePoint.   The deceptive and unlawful manner and method in which Axceler accessed the software   (creating a fictitious user name and e-mail account to pose as a fictitious customer), itself, demonstrates the competitive value of this information.

124.     Axceler's conduct has caused and will continue to cause damage to AvePoint's business, and AvePoint is entitled to the relief provided in Va. Code § 18.2-152.12, including direct and consequential damages, in an amount to be determined at trial, and the cost of suit.

## PRAYER FOR RELIEF

36

WHEREFORE, AvePoint prays that this Court enter judgment in its favor against Defendants as follows:

A.      That this Court enter a temporary restraining order, preliminary injunction and permanent injunction restraining and enjoining Defendants, their officers, directors, employees, agents, successors and assigns, and any and all persons in active concert or participation with any of them, from continuing to engage in their false, deceptive and misleading advertising campaign against AvePoint or otherwise making false, deceptive, misleading and/or defamatory claims or statements about AvePoint or its products or services.

B.      That this Court enter an order requiring Axceler to account for and pay to AvePoint all profits derived from the sale, distribution or licensing of competing Axceler products or services using false, deceptive and misleading advertising or promotional materials, and/or other materials in violation of AvePoint's rights.

C.      That this Court enter an order requiring Defendants to issue a formal public retraction and engage in corrective advertising to rectify their false and deceptive and misleading statements about AvePoint and its products and services.

D.      That this Court enter an order requiring Axceler to destroy any and all copies of DocAve and derivative works thereof that have been wrongfully obtained or created by Axceler.

E.      That this Court award AvePoint damages against Defendants in an amount to be determined at trial.

F.      That, given the willful nature of Defendants' actions, this Court enter judgment pursuant to 15 U.S.C. § 1117 in an amount to include Axceler's profits derived from its violations of AvePoint's rights, and three times the damages sustained by AvePoint, or statutory damages for use of counterfeit mark in lieu of damages and profits.

{#1599484-1, 109110-00001-05}

G.      That, given the willful nature of Defendants' acts, this Court award AvePoint punitive damages against Defendants in an amount to be determined at trial.

H.      That AvePoint be awarded pre-judgment and post-judgment interest on any damage award.

I.      That AvePoint be awarded its reasonable attorney's fees, costs and expenses incurred in bringing this action pursuant to 15 U.S.C. § 1117(a), Virginia Code §§ 18.2-216, 59.1-68.3, and/or 18.2-152.12, or as otherwise permitted by law.

J.      That Defendants be required to file and serve on AvePoint within thirty (30) days after the issuance of any injunction, a written report under oath setting forth in detail the manner and form in which Defendants have complied with this injunction.

K.      That AvePoint be granted such further relief as the Court may deem appropriate.

## **JURY DEMAND**

AvePoint hereby requests a trial by jury on all matters and issues triable by a jury.

{#1599484-1, 109110-00001-05}

Dated:  May 9, 2013                          Respectfully submitted,

                                             /s/ Joshua R. Treece

                                             Joshua F. P. Long (VSB #65684)
                                             Joshua R. Treece (VSB #79149)
                                             WOODS ROGERS PLC
                                             P. O. Box 14125
                                             Roanoke, VA  24038-4125
                                             Phone:  (540) 983-7725 phone
                                             Fax:  (540)983-7711
                                             jlong@woodsrogers.com
                                             jtreece@woodsrogers.com

                                             Robert M. Tyler (VSB #37861)
                                             MCGUIRE WOODS LLP
                                             One James Center
                                             901 East Cary Street
                                             Richmond, VA 23219
                                             Phone:  (804) 775-7695
                                             Fax:  (804) 698-2197
                                             rtyler@mcguirewoods.com

                                                  *Counsel for Plaintiffs AvePoint, Inc.
                                                  and AvePoint Public Sector, Inc.*

{#1599484-1, 109110-00001-05}

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2013, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and that a true and accurate copy of the foregoing was sent via the CM/ECF system to the following participants:

Wyatt B. Durrette, Jr., Esq. (VSB # 04719)
J. Buckley Warden IV, Esq. (VSB # 79183)
DurretteCrump PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Phone:  (804) 775-6900
Fax:  (804) 775-6911
wdurrette@durrettecrump.com
bwarden@durrettecrump.com

*Counsel for Defendant Power Tools, Inc. d/b/a Axceler*

Brian A. Richardson, Esq. (VSB # 68582)
McCandlish Holton, PC
1111 East Main Street, Suite 1500
Richmond, Virginia 23218
Phone: (804) 775-3100
Fax:  (804) 775-3800
brichardson@lawmh.com

John P. Kristensen, Esq. (CA Bar No. 224132)
Admitted *Pro Hac Vice*
Kristensen Law Group
12304 Santa Monica Boulevard, Suite 221
Los Angeles, California 90025
Phone:  (310) 507-7924
Fax:  (310) 507-7906
john@kristensenlaw.com

*Counsel for Defendant Michael X. Burns*

/s/ Joshua R. Treece

40

{#1599484-1, 109110-00001-05}